ANNA TEDLA et al., Respondents, *v.* JOSEPH ELLMAN et al., Appellants.

MARY BACHEK, as Administratrix of the Estate of JOHN BACHEK, Deceased, Respondent, *v.* JOSEPH ELLMAN et al., Appellants.

Submitted October 24, 1938; decided Fenruary 28, 1939.

*Hobart R. Marvin* and *James A. Hughes* for appellants. Decedent and plaintiff respondant were guilty of contributory negligence as a matter of law and the complaints should have been dismissed. (*Martin* v. *Herzog*, 228 N. Y. 164; *Concolino* v. *Kunzelman*, 259 N. Y. 602; *Rosenberg* v. *Schwartz*, 260 N. Y. 162.)

*Jacob Zelenko* and *Sidney R. Siben* for respondents. Plaintiffs are not barred from recovering merely because section 85, subdivision 6, of the Vehicle and Traffic Law (Cons. Laws, ch. 72) prescribes the method of walking upon a highway. (*Rabinowitz* v. *Solomon*, 221 App. Div. 366; *Martin* v. *Herzog*, 228 N. Y. 164; *Kettle* v. *Turl*, 162 N. Y. 255; *Boronkay* v. *Robinson & Carpenter*, 247 N. Y. 365; *Zurich G. A. & L. Ins. Co.* v. *Childs Co.*, 253 N. Y. 324; *Anderson* v. *Calkins*, 252 App. Div. 836; *Van Brunt* v. *N. Y. Tel. Co.*, 209 App. Div. 4; *Shields* v. *Consolidated Gas Co.*, 193 App. Div. 86; *Brown* v. *Shyne*, 242 N. Y. 176; *Hoffman* v. *Union Ferry Co.*, 47 N. Y. 176; *Minerly* v. *Union Ferry Co.*, 56 Hun, 113; *Lewis* v. *Rowland*, 225 App. Div. 25.)

LEHMAN, J. While walking along a highway, Anna Tedla and her brother, John Bachek, were struck by a passing automobile, operated by the defendant Hellman. She was injured and Bachek was killed. Bachek was a deaf-mute. His occupation was collecting and selling junk. His sister, Mrs. Tedla, was engaged in the same occupation. They often picked up junk at the incinerator of the village of Islip. At the time of the accident they were walking along " Sunrise Highway " and wheeling baby carriages containing junk and wood which they had picked up at the incinerator. It was about six o'clock, or a little earlier,

on a Sunday evening in December. Darkness had already set in. Bachek was carrying a lighted lantern, or, at least, there is testimony to that effect. The jury found that the accident was due solely to the negligence of the operator of the automobile. The defendants do not, upon this appeal, challenge the finding of negligence on the part of the operator. They maintain, however, that Mrs. Tedla and her brother were guilty of contributory negligence as matter of law.

Sunrise Highway, at the place of the accident, consists of two roadways, separated by a grass plot. There are no footpaths along the highway and the center grass plot was soft. It is not unlawful for a pedestrian, wheeling a baby carriage, to use the roadway under such circumstances, but a pedestrian using the roadway is bound to exercise such care for his safety as a reasonably prudent person would use. The Vehicle and Traffic Law (Cons. Laws, ch. 71) provides that " Pedestrians walking or remaining on the paved portion, or traveled part of a roadway shall be subject to, and comply with, the rules governing vehicles, with respect to meeting and turning out, except that such pedestrians shall keep to the left of the center line thereof, and turn to their left instead of right side thereof, so as to permit all vehicles passing them in either direction to pass on their right. Such pedestrians shall not be subject to the rules governing vehicles as to giving signals." (§ 85, subd. 6.) Mrs. Tedla and her brother did not observe the statutory rule and, at the time of the accident, were proceeding in easterly direction on the east-bound or right-hand roadway. The defendants moved to dismiss the complaint on the ground, among others, that violation of the statutory rule constitutes contributory negligence as matter of law. They did not, in the courts below, urge that any negligence in other respect of Mrs. Tedla or her brother bars a recovery. The trial judge left to the jury the question whether failure to observe the statutory rule was a proximate cause of the accident; he left to the jury no question of other fault or negligence on the part of Mrs. Tedla or her brother, and the

defendants did not request that any other question be submitted. Upon this appeal, the only question presented is whether, as matter of law, disregard of the statutory rule that pedestrians shall keep to the left of the center line of a highway constitutes contributory negligence which bars any recovery by the plaintiff.

Vehicular traffic can proceed safely and without recurrent traffic tangles only if vehicles observe accepted rules of the road. Such rules, and especially the rule that all vehicles proceeding in one direction must keep to a designated part or side of the road — in this country the right-hand side — have been dictated by necessity and formulated by custom. The general use of automobiles has increased in unprecedented degree the number and speed of vehicles. Control of traffic becomes an increasingly difficult problem. Rules of the road, regulating the rights and duties of those who use highways, have, in consequence, become increasingly important. The Legislature no longer leaves to custom the formulation of such rules. Statutes now codify, define, supplement and, where changing conditions suggest change in rule, even change rules of the road which formerly rested on custom. Custom and common sense have always dictated that vehicles should have the right of way over pedestrians and that pedestrians should walk along the edge of a highway so that they might step aside for passing vehicles with least danger to themselves and least obstruction to vehicular traffic. Otherwise, perhaps, no customary rule of the road was observed by pedestrians with the same uniformity as by vehicles; though, in general, they probably followed, until recently, the same rules as vehicles.

Pedestrians are seldom a source of danger or serious obstruction to vehicles and when horse-drawn vehicles were common they seldom injured pedestrians, using a highway with reasonable care, unless the horse became unmanageable or the driver was grossly negligent or guilty of willful wrong. Swift-moving motor vehicles, it was soon recognized, do endanger the safety of pedestrians crossing highways, and it is imperative that there the relative rights and duties of

pedestrians and of vehicles should be understood and observed. The Legislature in the first five subdivisions of section 85 of the Vehicle and Traffic Law has provided regulations to govern the conduct of pedestrians and of drivers of vehicles when a pedestrian is crossing a road. Until, by chapter 114 of the Laws of 1933, it adopted subdivision 6 of section 85, quoted above, there was no special statutory rule for pedestrians walking *along* a highway. Then for the first time it reversed, for pedestrians, the rule established for vehicles by immemorial custom, and provided that pedestrians shall keep to the left of the center line of a highway.

The plaintiffs showed by the testimony of a State policeman that " there were very few cars going east " at the time of the accident, but that going west there was " very heavy Sunday night traffic." Until the recent adoption of the new statutory rule for pedestrians, ordinary prudence would have dictated that pedestrians should not expose themselves to the danger of walking along the roadway upon which the " very heavy Sunday night traffic " was proceeding when they could walk in comparative safety along a roadway used by very few cars. It is said that now, by force of the statutory rule, pedestrians are guilty of contributory negligence as matter of law when they use the safer roadway, unless that roadway is left of the center of the road. Disregard of the statutory rule of the road and observance of a rule based on immemorial custom, it is said, is negligence which as matter of law is a proximate cause of the accident, though observance of the statutory rule might, under the circumstances of the particular case, expose a pedestrian to serious danger from which he would be free if he followed the rule that had been established by custom. If that be true, then the Legislature has decreed that pedestrians must observe the general rule of conduct which it has prescribed for their safety even under circumstances where observance would subject them to unusual risk; that pedestrians are to be charged with negligence as matter of law for acting as prudence dictates. It is unreasonable to ascribe to the Legislature an intention that

the statute should have so extraordinary a result, and the courts may not give to a statute an effect not intended by the Legislature.

The Legislature, when it enacted the statute, presumably knew that this court and the courts of other jurisdictions had established the general principle that omission by a plaintiff of a safeguard, prescribed by statute, against a recognized danger, constitutes negligence as matter of law which bars recovery for damages caused by incidence of the danger for which the safeguard was prescribed. The principle has been formulated in the Restatement of the Law of Torts: " A plaintiff who has violated a legislative enactment designed to prevent a certain type of dangerous situation is barred from recovery for a harm caused by a violation of the statute if, but only if, the harm was sustained by reason of a situation of that type." (§ 469.) So where a plaintiff failed to place lights upon a vehicle, as required by statute, this court has said: " we think the unexcused omission of the statutory signals is more than some evidence of negligence. It is negligence in itself. Lights are intended for the guidance and protection of other travelers on the highway. (Highway Law, § 329-a.) By the very terms of the hypothesis, to omit, wilfully or heedlessly, the safeguards prescribed by law for the benefit of another that he may be preserved in life or limb, is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform. That, we think, is now the established rule in this State." (*Martin* v. *Herzog*, 228 N. Y. 164, 168, per CARDOZO, J.) The appellants lean heavily upon that and kindred cases and the principle established by them.

The analogy is, however, incomplete. The " established rule " should not be weakened either by subtle distinctions or by extension beyond its letter or spirit into a field where " by the very terms of the hypothesis " it can have no proper application. At times the indefinite and flexible standard of care of the traditional reasonably prudent man may be, in the opinion of the Legislature, an insufficient

measure of the care which should be exercised to guard against a recognized danger; at times, the duty, imposed by custom, that no man shall use what is his to the harm of others provides insufficient safeguard for the preservation of the life or limb or property of others. Then the Legislature may by statute prescribe additional safeguards and may define duty and standard of care in rigid terms; and when the Legislature has spoken, the standard of the care required is no longer what the reasonably prudent man would do under the circumstances but what the Legislature has commanded. That is the rule established by the courts and " by the very terms of the hypothesis " the rule applies where the Legislature has prescribed safeguards " for the benefit of another that he may be preserved in life or limb." In that field debate as to whether the safeguards so prescribed are reasonably necessary is ended by the legislative fiat. Obedience to that fiat cannot add to the danger, even assuming that the prescribed safeguards are not reasonably necessary and where the legislative anticipation of dangers is realized and harm results through heedless or willful omission of the prescribed safeguard, injury flows from wrong and the wrongdoer is properly held responsible for the consequent damages.

The statute upon which the defendants rely is of different character. It does not prescribe additional safeguards which pedestrians must provide for the preservation of the life or limb or property of others, or even of themselves, nor does it impose upon pedestrians a higher standard of care. What the statute does provide is rules of the road to be observed by pedestrians and by vehicles, so that all those who use the road may know how they and others should proceed, at least under usual circumstances. A general rule of conduct — and, specifically, a rule of the road — may accomplish its intended purpose under usual conditions, but, when the unusual occurs, strict observance may defeat the purpose of the rule and produce catastrophic results.

Negligence is failure to exercise the care required by law. Where a statute defines the standard of care and the safe-

guards required to meet a recognized danger, then, as we have said, no other measure may be applied in determining whether a person has carried out the duty of care imposed by law. Failure to observe the standard imposed by statute is negligence, as matter of law. On the other hand, where a statutory general rule of conduct fixes no definite standard of care which would under all circumstances tend to protect life, limb or property but merely codifies or supplements a common-law rule, which has always been subject to limitations and exceptions; or where the statutory rule of conduct regulates conflicting rights and obligations in manner calculated to promote public convenience and safety, then the statute, in the absence of clear language to the contrary, should not be construed as intended to wipe out the limitations and exceptions which judicial decisions have attached to the common-law duty; nor should it be construed as an inflexible command that the general rule of conduct intended to prevent accidents must be followed even under conditions when observance might cause accidents. We may assume reasonably that the Legislature directed pedestrians to keep to the left of the center of the road because that would cause them to face traffic approaching in that lane and would enable them to care for their own safety better than if the traffic approached them from the rear. We cannot assume reasonably that the Legislature intended that a statute enacted for the preservation of the life and limb of pedestrians must be observed when observance would subject them to more imminent danger.

The distinction in the effect of statutes defining a standard of care or requiring specified safeguards against recognized dangers and the effect of statutes which merely codify, supplement or even change common-law rules or which prescribe a general rule of conduct calculated to prevent accidents but which under unusual conditions may cause accidents, has been pointed out often. Seldom have the courts held that failure to observe a rule of the road, even though embodied in a statute, constitutes negligence as matter of law where observance would subject a person to

danger which might be avoided by disregard of the general rule. " In the United States and in England certain rules regarding the rights of vehicles and persons meeting or passing in the public highway have been established by long continued custom or usage, or, in many jurisdictions, by statutory regulation. These rules and regulations are usually spoken of as ' the law of the road ' or the ' rules of the road.' These rules are, however, not inflexible, and a strict observance should be avoided when there is a plain risk in adhering to them, and one who too rigidly adheres to such rules when the injury might have been averted by variance therefrom, may be charged with fault; * * * the exceptions to the rule of the road depend upon the special circumstances of the case, and in respect to which no general rule can be applied." (13 Ruling Case Law, tit. " Highways," § 222. Cf. *Clarke* v. *Woop*, 159 App. Div. 437; 2 Thomas on Negligence [2d ed.], p. 2346; 3 Shearman & Redfield on The Law of Negligence, § 649; *Herdman* v. *Zwart*, 167 Iowa, 500, 503; *McElhinney* v. *Knittle*, 199 Iowa, 278; *Piper* v. *Adams Express Co.*, 270 Penn. St. 54; *Dohm* v. *Cardozo*, 165 Minn. 193; *Snow* v. *Riggs*, 172 Ark. 835, 840. See, also, 24 A. L. R. 1304, note; 63 A. L. R. 277, note.)

The generally accepted rule and the reasons for it are set forth in the comment to section 286 of the Restatement of the Law of Torts: " Many statutes and ordinances are so worded as apparently to express a universally obligatory rule of conduct. Such enactments, however, may in view of their purpose and spirit be properly construed as intended to apply only to ordinary situations and to be subject to the qualification that the conduct prohibited thereby is not wrongful if, because of an emergency or the like, the circumstances justify an apparent disobedience to the letter of the enactment. * * * The provisions of statutes, intended to codify and supplement the rules of conduct which are established by a course of judicial decision or by custom, are often construed as subject to the same limitations and exceptions as the rules which they supersede. Thus, a

statute or ordinance requiring all persons to drive on the right side of the road may be construed as subject to an exception permitting travellers to drive upon the other side, if so doing is likely to prevent rather than cause the acci dents which it is the purpose of the statute or ordinance to prevent."

Even under that construction of the statute, a pedestrian is, of course, at fault if he fails without good reason to observe the statutory rule of conduct. The general duty is established by the statute, and deviation from it without good cause is a wrong and the wrongdoer is responsible for the damages resulting from his wrong. (Cf. *Dohm* v. *Cardozo, supra; Heidman* v. *Zward, supra; Clarke* v. *Woop, supra.*)

I have so far discussed the problem of the plaintiffs' right to compensation for the damages caused by defendants' negligence as if it depended solely upon the question of whether the pedestrians were at fault, and I have ignored the question whether their alleged fault was a proximate cause of the accident. In truth, the two questions cannot be separated completely. If the pedestrians had observed the statutory rule of the road they would have proceeded easterly along the roadway on the left of the center grass plot, and then, it must be conceded, they would not have been struck by the automobile in which the defendants were riding, proceeding in the same direction along the roadway on the right. Their presence on the roadway where they were struck was an essential condition of their injury. Was it also as matter of law a proximate cause of the accident? " The position of a vehicle, which has been struck by another, may or may not have been one of the causes of the striking. Of course it would not have been struck if it had not been in the place where the blow came. But this is a statement of an essential condition, and not of a cause of the impact. The distinction is between that which directly or proximately produces, or helps to produce, a result as an efficient cause, and that which is a necessary condition or attendant circumstance of it.

\* \* \* What is a contributing cause of an accident is usually a question for a jury, to be determined by the facts of the particular case." (*Newcomb* v. *Boston Protective Department*, 146 Mass. 596, 604.) Here the jury might find that the pedestrians avoided a greater, indeed an almost suicidal, risk by proceeding along the east bound roadway; that the operator of the automobile was entirely heedless of the possibility of the presence of pedestrians on the highway; and that a pedestrian could not have avoided the accident even if he had faced oncoming traffic. Under those circumstances the question of proximate cause, as well as the question of negligence, was one of fact.

In each action, the judgment should be affirmed, with costs.

CRANE, Ch. J., HUBBS, LOUGHRAN and RIPPEY, JJ., concur; O'BRIEN and FINCH, JJ., dissent on the authority of *Martin* v. *Herzog* (228 N. Y. 164).

Judgments affirmed.