**EBASCO SERVICES, INC., Plaintiff,**

v.

**PACIFIC INTERMOUNTAIN EXPRESS COMPANY, Defendant and Third-Party Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, Third-Party Defendant.**

**No. 74 Civ. 1729.**

United States District Court, S. D. New York.

June 20, 1975.

Bigham, Englar, Jones & Houston, New York City, for plaintiff.

Tell, Cheser & Breitbart, New York City, for defendant.

Herbert T. Dike, for General Electric Co.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Plaintiff, Ebasco Services, Inc. (Ebasco) and third-party defendant, General Electric Co. (G.E.) each move for summary judgment against defendant, third-party plaintiff, Pacific Intermountain Express Co. (P.I.E.) pursuant to Rule 56 Fed.R.Civ.P. For reasons appearing below, plaintiff Ebasco's motion is granted but third-party defendant G.E.'s motion is denied.

Plaintiff, assignee of the Florida Power & Light Co., brings this action to recover for damages sustained in transit to a condensate pump motor when the top part of the motor struck the underside of a New York State vehicular bridge while being transported by P.I.E. on one of its flat-bed trailer trucks in April of 1972. Defendant P.I.E. impleaded G.E. as third-party defendant, claiming that if it is found liable for damage to the motor it is entitled to indemnity from G.E. based on representations made by G.E.'s employees to the P.I.E.'s driver to the effect that the height of the shipment had been measured and was safe to be driven.

Several legal rubrics have been asserted by the parties as governing liability in this case. They include the bill of lading, Interstate Commerce Commission Regulations,[1] the Federal Motor Carrier Act,[2] and New York Vehicle & Traffic Law § 385(2), McKinney's Consol.Laws, c. 71.

Vehicle & Traffic Law § 385(2), set forth in the margin,[3] has been held to impose absolute liability upon the operator of an over-height vehicle for damages sustained by virtue of an excessively high load. Such liability runs to private plaintiffs as well as the State, Pelkey v. Kent, 28 A.D.2d 636, 280 N.Y. S.2d 517 (4th Dep't 1967), citing Tedla v. Ellman, 280 N.Y. 124, 130–31, 19 N.E.2d 987, 990–91 (1939), and it is undisputed that contributory negligence is not a defense. See New York State Thruway Auth. v. Maislin Bros. Transport, Ltd., 35 A.D.2d 301, 315 N.Y.S. 2d 954, 957 (4th Dep't 1970).

I find this is a clear case for summary judgment. Ross v. Nelson, 74 Misc.2d 309, 344 N.Y.S.2d 454 (Sup. Ct.Suff.Co.1973). Indeed summary judgment has already been granted by a New York State Court to the State in parallel litigation for damage to its bridge on account of "the violation by the defendants of the noted [state] statute." New York v. Bernard Gage

and Pacific Intermountain Express, Index No. 185/74 (Supreme Court, Albany County Special Term, October 11, 1974). Therefore, Ebasco's motion for summary judgment against defendant P.I.E. is granted.

However, I deny third-party defendant G.E.'s motion for summary judgment against third-party plaintiff P.I.E. The State Court, *supra*, likewise refused to grant G.E. summary judgment; that Court found the movant's authorities "distinguishable or otherwise not controlling, and the facts alleged in the third-party complaint . . . give rise to a valid or recognizable cause of action. (See, Continental Can Co. v. Eazor Express, Inc., 2 Cir., 354 F.2d 222; Dole v. Dow Chemical, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288)."[4] I agree with the reasoning of the State Court but I consider it appropriate to state further grounds for my consideration. The I.C.C. regulations and the cases the movant cites do not support the proposition that the carrier is liable for the damage caused by the allegedly excessive height of the shipment as a matter of law. Indeed, no case finding liability under these regulations on the basis of excess height is cited. The rules and cases relate to loading that will properly *distribute* and *secure* the cargo.[5]

---

1. 49 C.F.R. §§ 392.1, 392.2, 392.9 promulgated pursuant to 49 U.S.C. 316(b).

2. 49 U.S.C. §§ 20(11), 319.

3. Section 385. Dimensions and weights of vehicles.

No person shall operate or move or cause or knowingly permit to be operated or moved on any highway or bridge thereon, in any county not wholly included within a city, any vehicle or combination of vehicles of a size or weight exceeding the limitations provided for in this section.
\* \* \* \* \*
2. The height of a vehicle from under side of tire to top of vehicle, inclusive of load, shall be not more than thirteen and one-half feet. Any damage to highways, bridges or highway structures resulting from the use of a vehicle exceeding thirteen feet in height where such excess

height is the proximate cause of the accident shall be compensated for by the owner and operator of such vehicle.

4. Memorandum opinion of Pitt, J., *supra*.

5. § 392.1 Scope of the rules in this part.
(a) General. Except as provided in paragraphs (c) and (d) of this section, every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of motor vehicles, or the hiring, supervising, training, assigning or dispatching of drivers, shall be instructed in and comply with the rules in this part.
§ 392.2. Applicable operating rules.
Every motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Highway Administration

In fact, General Electric Co. v. Moretz,[6] upon which movants strongly rely, is further distinguishable, since it was established at trial that the carrier there accepted and transported a shipment despite actual notice that the freight was improperly loaded. G. E.'s alternate position is that even absent a non-delegable duty upon the carrier, under the bill of lading and the common law the liability is solely and squarely upon P.I.E.'s shoulders. Section 1 of defendant's bill of lading provides that:

"[T]he carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided [inter-alia] . . . the act or default of the shipper or owner . . . . "

The common law rule was summarized in United States v. Savage Truck Line, Inc.[7] as follows:

"When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper. This rule is not only followed in cases arising under the federal statutes by decisions of the federal courts but also for the most part by the decisions of the state courts." [8]

■ It is clear that an unobservable defect is a latent defect while a readily apparent defect is a patent defect. Here, we have an "observable" defect in the sense that the total height is apparent to the naked eye yet it is not necessarily a patent defect since the excess may not be readily apparent. What is patent may also depend in some measure upon the experience of the observer. On the one hand, an experienced flat-bed truck driver might notice a height surplus, but, on the other hand, a surplus of possibly one foot over the $13\frac{1}{2}$ foot limit (approximately 7%) might well be beyond a less-experienced driver's ability to recognize. The question of whether the defect here was patent is therefore not one for resolution by summary judgment. G.E.'s ar-

---

imposes a higher standard of care than that law, ordinance or regulation, the Federal Highway Administration regulation must be complied with.

§ 392.9  Safe loading.

(a) General. No person shall drive a motor vehicle and a motor carrier shall not require or permit a person to drive a motor vehicle unless—

(1) The vehicle's cargo is *properly distributed* and *adequately secured* as specified in §§ 393.100–393.106 of this subchapter.

(2) The vehicle's tailgate, tailboard, doors, tarpaulins, its spare tire and other equipment used in its operation, and the *means of fastening* the vehicle's cargo are *secured;* and

\*        \*        \*        \*        \*

(b) Drivers of trucks and truck tractors. Except as provided in subparagraph (4) of this paragraph, the driver of a truck or truck tractor must—

(1) Assure himself that the provisions of paragraph (a) of this section have been complied with before he drives that vehicle;

(2) *Examine* the vehicle's cargo and its *load-securing devices* within the first 25 miles after beginning a trip and cause any adjustments to be made to the cargo or load-securing devices (other than steel strapping) as may be necessary to maintain the *security of the vehicle's load;* and

(3) *Reexamine* the vehicle's cargo and its *load-securing devices* periodically during the course of transportation and cause any adjustments to be made to the cargo or load-securing devices (other than steel strapping) as may be necessary to *maintain the security of the vehicle's load.* (Emphasis added).

6.  270 F.2d 780 (4th Cir.), *reh. denied*, 272 F.2d 624, *cert. denied sub. nom.* Mason & Dixon Lines, Inc. v. General Electric Co., 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545 (1959).

7.  209 F.2d 442 (4th Cir. 1953), *cert. denied*, 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098 (1954).  See also Annot., 44 A.L.R.2d 993, 1001.

8.  209 F.2d at 445.

gument, that it is easy for P.I.E. to measure the height of the load before accepting it is beside the point, and in any event, the affidavits of P.I.E. employees claiming that G.E. employees represented the load to be of proper height raise further material issues of fact bearing on the ultimate issue of allocation of liability between G.E. and P.I.E.

For the above reasons, G.E.'s motion for summary judgment against P.I.E. is denied.

So ordered.