**DOLLAR DRY DOCK BANK, Plaintiff,**

v.

**George DENNING, et al., Defendants.**

**No. 90 Civ. 7583 (VLB).**

United States District Court,
S.D. New York.

April 14, 1993.

Stuart London, London & London, Rye Brook, NY, for plaintiff.

Saul S. Ahn, Account Officer, Dennis Bacsik, Staff Atty., F.D.I.C., J.J. Johnson, Section Chief, Monmouth Junction, NJ, for FDIC personnel.

Robert Goldstein, D'Andrea & Goldstein, Mt. Vernon, NY, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

I reluctantly order dismissal of this case pursuant to Fed.R.Civ.P. 41(b) and my memorandum order of September 15, 1992 quoted below because of failure of the Federal Deposit Insurance Corporation (FDIC) to delegate necessary authority to attorneys conducting litigation on its behalf in a timely fashion. Dismissal is required because the resulting delays, in addition to defeating effective pursuit of the national interest in collecting amounts due to insolvent banks, disrupt the court's work, take time away from other litigants, and prejudice private parties to the litigation, who are entitled to settlement or adjudication of cases involving them.

### II

This case was brought in 1990 on behalf of the Dollar Dry Dock Bank (the "bank"), alleging fraudulent conduct by defendants violative of the civil anti-racketeering provisions of 18 U.S.C. § 1964, popularly known as RICO. When the bank became insolvent and was taken over by the FDIC, outside private counsel for the bank was continued as attorney for the FDIC. After lack of prosecution of the case led to placement of the litigation

on the suspense calendar, outside counsel for the FDIC wrote on June 9, 1992:

> ... I am writing ... to confirm the status of ... settlement negotiations.... DDDB [the bank] has been taken over by the Federal Deposit Insurance Corporation (FDIC). I have forwarded defendant['s] settlement offer to both.... Currently, I am still awaiting instructions in how this matter should proceed.

No action was taken, leading to inquiries concerning the status of this case to which outside counsel for the FDIC responded on July 22, 1992:

> ... I am writing ... to once again update the Court as to the current status of this case. As of today, July 22, 1992, I have left several messages with ... the attorney for F.D.I.C. who has been assigned this case.
>
> As soon as he advises my office as to his position on the current on-going settlement negotiations, I shall notify the Court.

When no action was forthcoming, I signed the following order on September 15, 1992:

> Because of inactivity, this case is placed on the suspense calendar, and unless action is taken by one or more parties to restore the case to the active calendar by January 1, 1993, the case will be ... dismissed without prejudice.

On December 22, 1992, a copy of a letter from the FDIC Account Officer to outside counsel was forwarded in response to further inquiries made by my chambers as the deadline approached, concerning whether actual dismissal would be necessary. This document, indicating that copies were also sent to the Section Chief and internal FDIC Staff Attorney, stated:

> This is to advise you [referring to FDIC outside counsel] that any settlement with the defendants in the above case must be approved by senior officials in this office. Because of the holidays, many of these officials will be on vacation until early January, 1993.

I do not foresee any problems with obtaining approval for settlement.... I estimate that such approval will be obtained by January 15, 1993.

Outside counsel for the FDIC in a covering letter received with this document January 1993 stated:

> After repeated requests for instructions and warning the F.D.I.C. of the January 1, 1993 deadline, I was advised that appropriate decision makers would not be available until after January 1....
>
> Therefore, I respectfully request a one (1) month extension before Your Honor dismisses this case pursuant to your suspense calendar procedures. As this enclosed letter indicates, I do expect to have the appropriate approvals by January 15, 1993.

Since that time, no communications have been received from counsel for the FDIC or from other attorneys in this case.

### III

Rule 1 of the Federal Rules of Civil Procedure directs the courts to seek "to secure the just, speedy, and inexpensive determination of every action."[1] Congress mandated further efforts to promote that objective in enacting the Judicial Improvements Act of 1990, Public Law 101–650, 104 Stat. 5089, adding 28 U.S.C. § 473 to the Judicial Code.

Paralysis imposed on diligent attorneys who must obtain further authorization for every action, which must in turn be reviewed and approved at higher levels, translates itself into a logjam. This prevents other parties to cases from obtaining justice as to their claims and defenses, while also clogging judicial dockets.

Dismissal of a case brought by a federal agency for lack of prosecution is a remedy I apply with the greatest reluctance.[2] It is evident, however, from the course of events in this case[3] that substitution of mul-

---

1. See also Great Charter of King John of 1215 (Magna Carta) ch 40: "To none will we ... deny, or delay, right or justice."

2. See *Brown v. Doe*, 803 F.Supp. 932 (S.D.N.Y. 1992). See also later decision in *Brown v. Doe*, 811 F.Supp. 156 (S.D.N.Y.1993) (appeal pending).

3. The situation presented here, while extreme, is not isolated. In other cases phenomena such as similar if lesser delays, service of papers at the

tiple levels of approval for retention or support of trusted litigation counsel is leading to paralysis in litigation affecting significant parts of the banking structure, and that where this paralysis exists it is impervious to communications from the judiciary asking for help in disposing of litigation.

It has long been recognized that bureaucracy tends to feed on itself, leading to ever more levels of review of routine actions, so that as pointed out by C.N. Parkinson in *Parkinson's Law* (1957), work expands to fill the time which can be made available for its completion. This tends to occur for several reasons, including the need for reviewers to justify their functions and fear of criticism in case a mistake is made at lower levels.

Where large numbers of similar situations must be confronted, selection of proper personnel to make the on-the-line decisions is necessary to favorable results. Higher level review should be diverted to the functioning of the operation; it should not include microscopic review of every foreseeable or routine action by the primary decision maker. Multiplying levels of review of such steps not only leads to greater expense and delay, but it enhances the likelihood of errors. Less information is ordinarily available to the ultimate reviewer than to those closer to the action. Paperwork which will protect remote decisionmakers in the event of criticism tends to be substituted for common sense.

However inherent these tendencies may be in large organizations, but such organizations have the power to overcome and reverse the tendencies if they deliberately set out to do so; indeed in some instances they may tacitly permit the working levels to act on their own notwithstanding "parchment barriers"[4] so long as the objectives and criteria of the agency are followed. Where external pressure for results exists[5]—in the great emergencies[6] and in many smaller entities[7]—gravitational tendencies toward ever more complex connective tissue within bureaucracies are by necessity overcome.[8]

■ For these reasons, I decline to accept the size or complexity of the FDIC as an excuse for failure to delegate necessary authority to the operational levels to permit its counsel to handle litigation in a timely fashion.

## IV

■ This case is dismissed without prejudice for lack of prosecution and the clerk is directed to close it.

Any refiling of this case must be accompanied by a copy of this memorandum order and affidavits explaining (a) how the problems described in this memorandum order have been corrected and (b) why the settlement effort under consideration as of January 1, 1993 was not successful.

In order to insure that steps are taken to assure that the problems outlined above will not recur if this case is reinstituted, FDIC representatives are directed to forward copies of this memorandum order to the chief executive officer of the agency and to the appropriate committees of Congress con-

last possible moment despite lengthy prior notice, and attempts by higher levels to overturn agreements made before the court by counsel assigned to cases have become matters of concern.

4. *The Federalist* No 48 (Madison); compare *Tedla v. Ellman*, 280 N.Y. 124, 19 N.E.2d 987 (1939); Fed.R.Civ.P. 61 (harmless error rule); 1 S. Ambrose, *Eisenhower* 48 (1983).

5. External pressure is present in the case of prosecutors who cannot delay cases because of speedy trial requirements in criminal cases, necessitating effective delegation of authority to Assistant United States and district attorneys in criminal matters. See in one area, "Creation of Consumer Fraud Units in United States Attorneys' Offices in Major Metropolitan Areas," 32

Record of The Ass'n of the Bar of the City of New York 371 (1977).

6. See generally A. Taylor, *Beaverbrook* 413–449 (1972); H. Summers, *On Strategy* ch 10, 14 & p. 198–240 (1982); R. Connery, *The Navy and the Industrial Mobilization in World War II*, ch XV & p. 341 (1951); B. Tuchman, *Stilwell: The American Experience in China* (1970); L. Kennedy, *Pursuit: The Chase and Sinking of the Battleship Bismarck* (1974); G. Prange, *Miracle at Midway* 290, 339 (1982).

7. J. Jacobs, *The Economy of Cities* (1969).

8. See also Task Force on Simplification of the Law, New York State Bar Ass'n, *Interim Report No. 1—Internal Bureaucratic Structure of Agencies* (1986).

 

cerned with banking and currency matters and government operations; copies of such transmittals shall be sent to the court.

SO ORDERED.