John **CAREY,** as a County Court Judge of the State of New York, Plaintiff,

v.

Mario M. **CUOMO,** as Governor of the State of New York; and Judith S. Kaye, Francis T. Murphy, Guy J. Mangano, Leonard A. Weiss and M. Dolores Denman, members of and constituting the Administrative Board of the Courts of the State of New York, Defendants.

No. 93 Civ. 5698 (VLB).

United States District Court,
S.D. New York.

July 5, 1994.

---

E.A. Dominianni, Coudert Brothers, New York City, for plaintiff.

John J. Sullivan, Asst. Atty. Gen., New York City, for defendant Cuomo.

Michael Colodner, New York City, for other defendants.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case presents the question of appropriate federal judicial response to a claim of irrational classification of state judicial officers for purposes of post-retirement service where no legitimate reason for the distinction has to date been provided. The resolution of the question is not simple, because finding a Fourteenth Amendment violation in what may amount to discretionary line-drawing by a state in the core area of its selection of personnel to perform key functions of sovereignty may run counter to the assumptions of federalism and tend to "trivialize" the Amendment. *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986), quoting Stewart, J. concurring in *Parratt v. Taylor,* 451 U.S. 527, 545, 101 S.Ct. 1908, 1918, 68 L.Ed.2d 420 (1981) (overruled on another point). The most appropriate outcome to this dilemma would be for state authorities either:

(a) to rule the distinction inappropriate; or

(b) to provide a rational, legitimate governmental purpose for its maintenance.

In a memorandum order dated January 25, 1994 (the "January 25 decision"), I held that since ruling on constitutional issues should be avoided if possible, full opportunity for either of the options mentioned to be taken should precede any potentially inappropriate federal judicial ruling. *Carey v. Cuomo,* 842 F.Supp.

113 (S.D.N.Y.1994).[1] Familiarity with the January 25 decision is assumed.

 Plaintiff having unsuccessfully sought the administrative, but not the state judicial and if necessary legislative recourse, called for by the January 25 decision, renews his application for adjudication of the case here; defendants cross-move for dismissal. For the reasons and under the circumstances outlined below, I adhere to the January 25 decision; there is no basis for ignoring available state remedies absent irreparable injury of a type justifying accelerated decision on the federal constitutional issue.

## II

The dispute in this case involves the circumstances under which New York State jurists utilized as acting Supreme Court justices are entitled to be considered for post-retirement opportunities equal to those afforded to Supreme Court justices. Plaintiff John Carey ("Carey"), a County Court judge who had served as an acting Supreme Court justice, who had served as an acting Supreme Court justice, filed suit in this court under 42 U.S.C. § 1983, asserting that denial of such opportunities violated the Equal Protection Clause of the Fourteenth Amendment and state law.

 Since Carey has not asserted the denial of a fundamental right and no invidious classification is involved, the challenged categorization is subject to a rational basis standard of review. Thus, the classification will hold as long as it is rationally related to some legitimate state interest; there is a presumption of constitutionality. In *Maresca v. Cuomo*, 64 N.Y.2d 242, 485 N.Y.S.2d 724, 475 N.E.2d 95 (1984), the New York Court of Appeals held it rational for New York State to permit only Court of Appeals and Supreme Court justices to serve on the Supreme Court after the age of seventy. 64 N.Y.2d at 252–53, 485 N.Y.S.2d 724, 475 N.E.2d 95. Here, no legitimate reason has been offered to support a distinction between acting and other Supreme Court justices if

equally qualified by experience and otherwise to be considered for post-retirement service.

Federal courts should nevertheless be reluctant to interfere with the internal dispositions of state judicial personnel by state authorities. This is especially so where an applicant for a public sector position is seeking affirmative relief under circumstances not involving invidious discrimination or deprivation of a fundamental right. It is unclear whether or not the Fourteenth Amendment as applied to state action as an employer, as distinct from state action in a sovereign capacity, reaches as far as would be necessary to award relief to Carey in the present case. See *Watkins v. McConologue*, 820 F.Supp. 70 (S.D.N.Y.), *aff'd without opinion*, 978 F.2d 706 (2d Cir.1992).

To avoid this dilemma, further consideration of the purposes and validity under state law of the current distinction at the state level appeared warranted prior to ultimate consideration of federal judicial intervention. Having received a negative ruling from the state administrative authorities, Carey renews his motion for immediate relief without pursuing the concededly potentially lengthy route of seeking legislation, or invoking state judicial remedies. Carey points out that delay may make his claim to entitlement to consideration as a potential post-retirement Supreme Court justice moot, that the state judiciary itself is involved in the administrative decision rejecting his argument, and that legislative relief, if any, is not likely to occur quickly.

Defendants seek dismissal of the case on the pleadings, relying in part on the problematic nature, recognized in the January 25 decision, of plaintiff's invocation of the Fourteenth Amendment to seek to compel New York State to structure its judicial assignment policies and accompanying compensation in a particular manner.

## III

While the January 25 decision called for resort to state judicial remedies, a difficult

---

1. The January 25 decision did not require presentation of the Fourteenth Amendment contentions already raised in this court to the state courts, and hence as in *Texas v. Pullman Co.*, 312

U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), does not involve abdication of federal jurisdiction but only deferral of its exercise.

question is now raised because of judicial involvement in the negative administrative decision received by Carey, complicated by inclusion of state judicial personnel as defendants in this suit.

The importance of the appearance as well as the reality of impartiality, to secure justice and its appearance, has been a subject of steadily increasing concern at federal and state levels. *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *Steele v. Louisville & Nashville RR,* 323 U.S. 192, 206, 65 S.Ct. 226, 234, 89 L.Ed. 173 (1944); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968); *Young v. United States ex rel. Vuitton et Fils SA,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). New York courts, like federal ones, are highly sensitive to this problem. *Syquia v. Board of Education,* 80 N.Y.2d 531, 591 N.Y.S.2d 996, 606 N.E.2d 1387 (1992) (overpayment of member of tripartite panel by an institutional participant voids the result).

■ In some instances, judicial authorities adjudicate cases affecting the judiciary itself as a whole pursuant to the Rule of Necessity which allows adjudication to proceed despite potential bias rather than being unavailable at all. See generally *United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). Jurisdiction may be exercised of necessity when no other tribunal is available. *Morgenthau v. Cooke,* 56 N.Y.2d 24, 451 N.Y.S.2d 17, 436 N.E.2d 467 (1982).

Faced with problems of this nature, New York courts have held that resort to another tribunal is an appropriate solution where the primary decisionmaker might face a potential conflict. The State Court of Appeals held in *GMC v. Rosa,* 82 N.Y.2d 183, 187, 604 N.Y.S.2d 14, 17, 624 N.E.2d 142 (1993):

> Given the principle [of impartiality] at stake, "necessity" must be construed strictly, in favor of delegating judicial authority to others whenever possible. . . .

Resort to the supplemental jurisdiction of this court under 28 USC 1367 over plaintiff's pendent state claims, or treatment of analysis here as persuasive authority, might furnish one means of achieving the outcome called for by *GMC.*

## IV

While *GMC* indicates that it may be appropriate from a state law standpoint for the issues presented here to be discussed by another tribunal if it can properly be done, the jurisdiction of federal courts is limited by federal statute and constitutional interpretations. *Pennhurst State School v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), holds that federal courts cannot command state officials to follow state law pursuant to their pendent jurisdiction (now defined as supplemental jurisdiction under 28 U.S.C. § 1367) over related state law claims.[2]

State law issues can, however, be considered as part of the process of determining whether an appropriate construction of state constitutional and statutory provisions is available which is consistent with state case law so as to avoid any federal constitutional questions. If such an appropriate interpretation exists, a federal court may—provided no irreparable injury to a litigant would be caused—properly assume that it or an alternative likewise avoiding the federal question, will be adopted.

## V

New York Constitution Article VI § 25(b) and New York Judiciary Law § 115, set forth in full as Appendix A to this memorandum order, authorize the assignments at issue to retired Supreme Court justices. The question of interpretation here is whether that term includes acting Supreme Court justices. The term "Supreme Court justice" obviously does include acting Supreme Court justices for some purposes, including trial of cases assigned to the State Supreme Court.

---

**2.** Injunctive relief may be granted against state officials to prevent continuing violations of federal law. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908);

*Santiago v. New York State Dep't of Correction,* 945 F.2d 25, 32 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992).

There is no reason to treat the term "acting" to apply to such duties but not to cover potential future assignments if the assistance of former acting Supreme Court justices are in fact determined to be needed to accomplish the work of the courts. While the "same words, in different settings, may not mean the same thing," [3] there is no reason to treat the term "Supreme Court justice" as applicable to acting Supreme Court justices for one purpose but not for another in this context. Either titular or acting Supreme Court justices would seem to be equally able to fulfill any need for additional judicial services, provided actual experience and ability were found present.

■ New York courts interpret documents to fulfill their objectives to the extent possible. *Tedla v. Ellman*, 280 N.Y. 124, 19 N.E.2d 987 (1939). The purpose of the statute and constitutional provisions at issue here—to permit experience as a Supreme Court justice to be utilized for the public benefit—is served by a broad construction of eligibility.

At the same time, appropriations for additional utilization of retired jurists are not automatically increased because more members of the judiciary are held eligible to apply. The state constitutional and statutory provisions make a certificate of need necessary to use such retired jurists as Supreme Court justices. The appropriate state authorities may thus, consistent with these provisions, use some or all eligible personnel full or part time or on an as-needed basis, limiting the usage to what the budget will support. No mandatory language requiring full utilization of all eligible personnel is contained in any relevant provision. Moreover,

criteria for certification of need, and for selection of personnel for full or partial participation, may be developed.

The only obvious explanation for the contrary interpretation treating acting Supreme Court Justices as automatically ineligible for post-retirement service—although one not mentioned by any of the parties to be the real one—may be that to permit acting Supreme Court justices to be considered for such post-retirement service would compel state court administrators to determine who should serve in that capacity based upon actual experience, judicial temperament, efficiency and other less mechanical criteria.

The purpose of the public sector including the judiciary is to provide service to the public—in the case of the judiciary "for the convenience of the lay people who sue and are sued".[4] The wider the scope of jurists with the relevant experience who may be considered, the greater the likelihood that the most qualified personnel can be recruited. This is so whether experience was acquired as an acting or titular Supreme Court justice. Any administrative difficulties could be ameliorated by adoption of guidelines based on such factors as recency and length of relevant prior service as well as other criteria.

## VI

Plaintiff Carey apparently served as an acting Supreme Court justice only for approximately six months in 1987. Under such circumstances it would appear unlikely that he would be near the top of any list of acting Supreme Court justices available for assignment as post-retirement jurists were the

**3.** *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 678, 70 S.Ct. 876, 882, 94 L.Ed. 1194 (1950) (Frankfurter, J. writing for the Court); see *RH Johnson & Co. v. SEC*, 198 F.2d 690, 696 (2d Cir.), *cert. denied*, 344 U.S. 855, 73 S.Ct. 94, 97 L.Ed. 664 (1952).

**4.** F. Pollock to O.W. Holmes in 1 *Holmes–Pollock Letters* 8 (Howe ed 1961).

Pollock's concept of the purpose of the public sector as primarily to provide service clashes with a competing notion that the public sector exists primarily to provide financial benefits to contractors seeking to provide the services, thus giving them the inherent vested right to insist on their selection even in the absence of any reliance interest. See Rutherford B. Hayes, Fourth Annual Message (Dec 6, 1880), 2 State of the Union Messages of the Presidents 1399 (1966); J. McGurrin, *Bourke Cockran: A Free Lance in American Politics* (1948, 1972).

The Constitution compels no acceptance of any such view. See Kannan, *Perkins v. Lukens Steel Company [310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940)]: Fifty-two and Counting*, 22 Public Contract LJ No 3 at 463 (ABA Spring 1993); see also *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868 (10th Cir.1992).

amount of experience as acting Supreme Court justice considered as one of the criteria.

Under the circumstances, the necessary irreparable injury making it appropriate to consider bypassing otherwise appropriate procedures in a manner similar to the grant of a preliminary injunction is absent. See *Bridgeport Coalition for Fair Representation v. City of Bridgeport*, 26 F.3d 271, 273–74 (2d Cir.1994); *Paddington Corp. v. Attiki Importers*, 996 F.2d 577 (2d Cir.1993); *Plaza Health Laboratories v. Perales*, 878 F.2d 577, 580 (2d Cir.1989); *Jackson Dairy v. HP Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979).

Further, irreparable injury might be caused to the public if federal court rulings seeking to deal with such matters as that involved here were prematurely and perhaps unwisely or erroneously available, thus adding another level of disputation to the already complex procedures for dealing with issues concerning public sector employment. Compare *Dollar Dry Dock v. Denning*, 148 F.R.D. 124 (S.D.N.Y.1993). This risk is especially significant where any relief granted would require state officials to allocate public sector job opportunities in a particular manner. There is no necessity for such interference to avoid invidious distinctions of the types at which the Civil War Amendments and subsequent interpretations and legislation are aimed, including the protection of rights essential to the functioning of the political process or access to the courts, particularly where the participants are at a disadvantage in making their views known through political processes. See *United States v. Carolene Products Co.*, 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234 (1938); Powell, *Carolene Products Revisited*, 82 Colum.L.Rev. 1087 (1982).

## VII

For these reasons the opposing dispositive motions of all parties are denied without prejudice to renewal under the circumstances set forth in the January 25 memorandum order. Carey may present the interpretation of the pertinent statutory and state constitutional provisions, discussed above, as a possible means to avoid the federal constitutional issue. He may also raise with them the question of whether or not, pursuant to *GMC v. Rosa*, 82 N.Y.2d 183, 604 N.Y.S.2d 14, 624 N.E.2d 142 (1993), the observations in this memorandum order, although not declared here to be binding,[5] should be followed to avoid the need for confronting the questions of impartiality set forth in that case.

**SO ORDERED.**

### APPENDIX A

Article VI, Section 25(b) of the New York State Constitution provides in pertinent part:

Each judge of the court of appeals, justice of the supreme court, judge of the court of claims, judge of the county court, judge of the surrogate's court, judge of the family court, judge of a court for the city of New York established pursuant to section fifteen of this article and judge of the district court shall retire on the last day of December in the year in which he reaches the age of seventy. Each such former judge of the court of appeals and justice of the supreme court may thereafter perform the duties of a justice of the supreme court, with power to hear and determine actions and proceedings, provided, however, that it shall be certified in the manner provided by law that the services of such judge or justice are necessary to expedite the business of the court and that he is mentally and physically able and competent to perform the full duties of such office. Any such certification shall be valid for a term of two years and may be extended as provided by law for an additional term of two years. A retired judge or justice shall serve no longer than until the last day of December in the year in which he reaches the age of seventy-six....

Judiciary Law § 115 provides:

1. Any justice of the supreme court, retired pursuant to subdivision b of section twenty-five of article six of the constitution, may, upon his application be certified by the administrative board for service as a retired justice of the supreme court upon findings (a) that he has the mental and physical capacity

---

**5.** See *IBM Credit Corp. v. United Home*, 848 F.Supp. 495 (S.D.N.Y.1994).

to perform the duties of such office and (b) that his services are necessary to expedite the business of the supreme court. . . .

2. Any such certification shall be valid for a term of two years beginning on the date of filing the certificate. At the expiration of such term the retired justice may be certified for additional terms of two years each by the administrative board upon findings of continued mental and physical capacity and need for his services. No retired justice may serve under any such certification beyond the last day of December in the year in which he reaches the age of seventy-six.