**Donna V. LICHTLER, as Administratrix of the Estate of Joanna Teresa Lichtler, Deceased; et al., Plaintiffs,**

v.

**The COUNTY OF ORANGE, et al., Defendants.**

**Amber LITCHHULT, an infant By her Parent and Natural Guardian Gilbert LITCHHULT and Gilbert Litchhult, Individually, et al., Plaintiffs,**

v.

**The COUNTY OF ORANGE, et al., Defendants.**

**Nos. 91 Civ. 7645 (VLB), 91 Civ. 7646 (VLB).**

United States District Court, S.D. New York.

Feb. 25, 1993.

Mark A. Allen, Coale, Allen, Van Susteren, Washington, DC, Michael C. Zwal, Levien & Zwal, New York City, for plaintiffs.

Lisa L. Gollihue, MacCartney, MacCartney, Kerrigan & MacCartney, Nyack, NY, for defendant County of Orange.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

These cases involve a disaster at the East Coldenham Elementary School arising out of a tornado and wind storm which struck the area on November 16, 1989. Plaintiffs assert that because of New York's compulsory education laws, the Fourteenth Amendment requires reasonable care of children in public schools and that this duty was violated, thus triggering liability under 42 USC § 1983. Plaintiffs also argue that the County of Orange undertook to help avoid such disasters through its disaster planning but failed to do so adequately, thus violating life, liberty and property rights of plaintiffs without due process.

Thirty-nine (39) state court suits for money damages ensued, against numerous parties alleged to have had some responsibility in varying ways for failure to prevent the disaster. These cases, filed in Supreme Court, Orange County, involve the parties to the present federal lawsuits. With the exception of claims against the County of

Orange which were dismissed,[1] these state suits are still pending.

The County of Orange has moved for summary judgment with respect to the complaints before me. For the reasons which follow, I grant partial summary judgment to the County pursuant to Fed. R.Civ.P. 56(d) as to one issue, conclude that adjudication of the remaining issues is premature until further developments in the state court actions, deny the motions without prejudice in all other respects, and place these cases on the suspense calendar.

## II

Since power implies responsibility, where governmental agencies or entities utilize sovereign compulsion to exercise coercive powers, a correlative duty exists of due care toward those subjected to such compulsion. This principle has been applied where persons are in various types of official custody. See *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Youngsberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).[2] Because of compulsory education laws, substantially expanded to cover post-elementary education after the Second World War,[3] the duty has also been recognized in some decisions as owed to children in public schools. *Pagano by Pagano v. Massapequa Public Schools*, 714 F.Supp. 641 (E.D.N.Y.1989); *Robert G. v. Newburgh City School District*, 1990 WL 3210, 1990 U.S.Dist.LEXIS 91 (S.D.N.Y. Jan. 5, 1990); see also *Doe v. New York City*, 649 F.2d 134 (2d Cir.1981) (foster care). A state imposing compulsory attendance upon school children must take reasonable steps to protect those required to attend from foreseeable risks of personal injury or death.

## III

I thus agree with plaintiffs that the County of Orange must take care to protect public school students from foreseeable risks of injury or loss of life. Questions remain, however, as to whether or not the duty to exercise reasonable care was violated, and as to what tribunal should determine that issue. See *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The County seeks summary judgment that no duty was violated.

I conclude that before I can determine whether or not genuine issues of material fact exist, further factual development is required concerning (a) what precautions might have been reasonable against the risk of a disaster such as that which occurred, and (b) whether or not deliberate or reckless disregard of the need for such precautions can be established. See *Mahoney v. Hankin*, 844 F.2d 64, 68 (2d Cir. 1988); *Goddard v. Urrea*, 847 F.2d 765, 769 (8th Cir.1988).

I deny this branch of the County's motion without prejudice for this reason and because, on the grounds discussed below, I conclude that further proceedings in state court should precede resolution in this court of the issue of whether the duty was violated.

## IV

In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981),[4] involving a claim under 42 USC § 1983 that the Fourteenth Amendment was violated by negligent loss of a prisoner's property, the Supreme Court held that (a) where no autho-

**1.** The final order of dismissal by Hon. Howard Miller, J.S.C. was dated January 6, 1993, based on denial by the New York State Court of Appeals on December 16, 1992 of a motion for leave to appeal earlier rulings.

**2.** See also *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) (foundation case recognizing duty fairly to represent all employees, where representative is given exclusive bargaining authority by federal law).

**3.** See D. Ravitch, *The Troubled Crusade: American Education 1945–1980* ch. 1 (1983).

**4.** *Parratt* was overruled on an aspect not pertinent here, and without disturbing the rulings discussed here, in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

rized but unconstitutional state procedure was involved and (b) where pre-deprivation proceedings were impracticable, due process could be satisfied by state post-deprivation remedies.[5]

In *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), *Parratt* was held to be applicable to deprivations of liberty as well as property. But the Court held involuntary placement in a mental hospital vulnerable to suit under 42 USC § 1983 where predeprivation safeguards were practicable but not provided. See *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (substantial financial deprivation without prior notice impermissible).

*Zinermon* underscored a major predicate of *Parratt*'s holding: that post-deprivation state remedies are adequate where "the very nature of a negligent loss" of the rights involved (property in *Parratt*) "made it impossible for the State to predict such deprivations and provide predeprivation process." Where that was the situation, "the State, by making available a tort remedy that could adequately redress the loss, had given ... the process ... due." 494 U.S. at 129, 110 S.Ct. at 985. The *Zinermon* opinion rejected applicability of *Parratt* to the involuntary hospitalization involved in that case, not because only state-created rights were involved in *Parratt,* or because liberty rather than property was at stake in *Zinermon,* but rather because pre-deprivation safeguards could have been furnished in *Zinermon* but were not.

Because the Court rejected any liberty/property distinction, 494 U.S. at 132, 110 S.Ct. at 986–87, *Zinermon* supports the applicability of *Parratt* to the case before me if state remedies are adequate.

## V

 The fact that state remedies appear unavailable against the County of Orange

does not mean that state remedies are inadequate, if recovery can be obtained in state court from the numerous remaining defendants in the state court litigation. The Court in *Parratt* indicated that even where "state remedies may not provide ... all the relief which may have been available ... under § 1983, that does not mean that state remedies are not adequate to satisfy the requirements of due process." 451 U.S. at 543, 101 S.Ct. at 1917.

There is no right to duplicate recovery under federal procedure; avoidance of overlapping monetary redress has been, in fact, a primary objective in the framing of remedies for violations of federal law. See *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (barring indirect purchaser suits for monetary damages caused by horizontal price fixing in violation of the Sherman Act, 15 USC § 1). Similarly, the fact that plaintiffs in state court are not entitled to take advantage of the Federal provisions under 42 USC § 1988 for payment of attorney's fees to prevailing parties does not make state remedies inadequate.

Section 1983 does not "make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), quoted in *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981).

Thus in addition to finding *Parratt* applicable to the present case and that recovery cannot be had in this court if state remedies are in fact adequate, I conclude that inadequacy with respect to such remedies may not be grounded in the mere fact, standing alone, that the County of Orange has been dropped from the state court litigation, nor may it be grounded in the fact

---

**5.** The Court in *Parratt* recognized that post-deprivation state remedies are inadequate if the governmental conduct authorized by an established state procedure has the predictable effect of causing a deprivation, and pre-deprivation safeguards such as notice and hearing are practicable. 451 U.S. at 538, 101 S.Ct. at 1914. This recognition was in accord with long-recognized standing under 42 USC § 1983 to challenge articulated state laws, customs or policies offensive to the Constitution. See *New York Civil Service Comm'n v. Snead,* 425 U.S. 457, 96 S.Ct. 1630, 48 L.Ed.2d 88 (1976).

that legal fees under 42 USC § 1988 are unavailable.

## VI

■ It would be premature to make a determination of adequacy or inadequacy of state procedures until there has been determined, in the state court litigation, the fate of the claims against defendants other than the County. While adequate state procedures necessarily embrace within them procedural rules which may derail a litigation if proper procedures are not taken, an absolute barrier such as state sovereign immunity would contravene the notion of adequacy of state remedies unless such a barrier turned out to be moot and hence irrelevant. If it were established that the dismissal of the County from the state court litigation based on procedural grounds having the effect of denying a remedy, and that this denial was not made moot by the availability of recovery from other defendants, adequate state procedures might be found not to exist.[6]

Similarly, any procedurally-based denial of state remedies as to the County would become significant rather than moot if substantial procedural barriers having no counterpart in the federal law that would apply under 42 USC § 1983, were to prevent plaintiffs from obtaining a decision on the merits of claims against one or more solvent defendants.[7]

## VII

■ There is a further reason for awaiting developments in the state court litigation before determining whether or not this 42 USC § 1983 suit may proceed. Exploration is required into the scope of defendants' federal constitutional duties to the school pupils, and into the adequacy or inadequacy of state remedies. Each of these areas presents important questions of federal constitutional law with potentially far-reaching repercussions. Foreclosure of access to the federal courts could deny Fourteenth Amendment rights if on the state level the duty of care was ignored and no adequate recourse was made available. At the same time, to permit suits in federal court where not required to vindicate such rights could not only "trivialize, but grossly ... distort the meaning and intent of the Constitution." *Parratt v. Taylor*, 451 U.S. 527, 545, 101 S.Ct. 1908, 1917–18, 68 L.Ed.2d 420 (1981) (Stewart, J. concurring).

■ Close or difficult constitutional questions with wide possible ramifications should be avoided whenever other reasonable avenues are available for dealing with the issues in ways consistent with fairness and the rights of the parties. See *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *International Ass'n of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); *Ashwander v. TVA*, 297 U.S. 288, 345–48, 56 S.Ct. 466, 482–84, 80 L.Ed. 688 (1936) (Brandeis, J. concurring); see also *New York Civil Service Comm'n v. Snead*, 425 U.S. 457, 96 S.Ct. 1630, 48 L.Ed.2d 88 (1976).

## VIII

Plaintiffs argue that in addition to violation of a federal constitutional duty of due care to protect public school children, state-created rights were violated which are enforceable under the Fourteenth Amendment and 42 USC § 1983.

---

**6.** State sovereign immunity has been recognized under the Eleventh Amendment with various qualifications not relevant here. See *Hilton v. South Carolina Public Railways Comm'n*, — U.S. ——, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991); *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). But absence of direct state liability does not preclude federal suits against state officials, state agency officials, or political subdivisions. See *Hafter v. Melo*, — U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Thus if state court sovereign immunity were extended to persons or entities pres-

ently subject to suit in federal court, obviously to that extent an adequate state remedy making federal relief unnecessary would be absent for purposes of the *Parratt* concept, unless other avenues made such absence irrelevant.

**7.** See generally *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) (decided under the Tax Injunction Act, 28 USC § 1341); Hill, *The Inadequate State Ground*, 65 Colum.L.Rev. 943 (1965); Note, 56 Fordham L.Rev. 1041 (1988).

■ Under some circumstances, a governmental policy—whether or not constitutionally required—may create such expectations that failure to fulfill those expectations constitutes denial of life, liberty or property without due process. In such instances, the rights are state created, but under the Fourteenth Amendment cannot be disregarded by the state without due process. But no evidence has been adduced indicating that any County of Orange policy was publicly communicated to an extent which did, or was likely to, lead to creation of such expectations or to reliance upon such policy. See *Carnes v. Parker,* 922 F.2d 1506 (10th Cir.1991); *Kelly Kare v. O'Rourke,* 930 F.2d 170 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991); *BAM Historic District Ass'n v. Koch,* 723 F.2d 233 (2d Cir.1983).[8]

■ In *DeShaney v. Winnebago County Social Services Dept.,* 489 U.S. 189, 201–02, 109 S.Ct. 998, 1006–07, 103 L.Ed.2d 249 (1989), the Supreme Court made it clear that a state agency which voluntarily undertakes to provide protection against a danger, thereby acquiring duties under state tort law, does not automatically violate the Fourteenth Amendment if the agency fails in its undertaking. The due process clause does not transform every tort committed by a state actor into a constitutional violation. Were the rule otherwise, states and localities would be discouraged from taking steps to avoid accidents, because doing so would expose them to additional liabilities, contrary to the objectives of Fed.R.Evid. 407 as well as to the interests of the public. Written policies, even in the public interest, would be discouraged because they could be used against the entities involved. This would be an untoward application of the Fourteenth Amendment unsupported by its text or history and inconsistent with its underlying objectives.[9]

Consequently, partial summary judgment is granted to defendants pursuant to Fed. R.Civ.P. 56(d) with regard to plaintiffs' claims that the County of Orange improperly failed to follow its own disaster plans.[10]

### IX

The placement of these cases on my suspense calendar is intended to be temporary, pending further elucidation of the relief available to plaintiffs in state court. Rather than attempting to define in advance what developments in the state court cases would permit effective evaluation of whether the cases before me should be permitted to proceed, I leave it to the parties, at the appropriate time, to move to reactivate or to dismiss these cases as appropriate. In the interim, prior to my action on any application for removal of the cases from suspense, any discovery or other litigation steps should proceed by consent only.

SO ORDERED.

---

8. See also Executive Order 12778, § 6, 56 Fed. Reg. 55195, 55200 (Oct. 25, 1991) (taking the position that procedures for federal litigation imposed on federal government attorneys by that Order create no private rights).

9. See *United States v. Classic,* 313 U.S. 299, 317–18, 61 S.Ct. 1031, 1038–39, 85 L.Ed. 1368 (1941).

10. Copies of planning documents previously claimed not to have been furnished to plaintiffs have now been filed with the court and supplied to plaintiffs' counsel.