**LITTLE TOR AUTO CENTER, et al., Plaintiffs,**

v.

**EXXON COMPANY USA, Defendant.**

**No. 93 Civ. 2832 (VLB).**

United States District Court, S.D. New York.

May 27, 1993.

Robert S. Lewis, Nyack, NY, for plaintiffs.

Robert Harrison, Exxon Co. USA, Houston, TX, for defendant.

### MEMORANDUM

VINCENT L. BRODERICK, District Judge.

#### I

This case, over which this court has jurisdiction under 28 U.S.C. §§ 1331 and 1337, was brought under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* (the "Act"). It was initiated by an *ex parte* order to show cause seeking interim relief in the nature of a temporary restraining order, despite the fact that the parties had been conducting conversations for some time. These discussions concerned whether defendant Exxon Company USA ("Exxon") could properly terminate the franchise of plaintiff Little Tor Auto Center (the "dealer").

The proposed *ex parte* order sought emergency relief pursuant to Fed.R.Civ.P. 65 to enjoin termination of the dealer and any interference with its operation of its franchise and to require release of various monies, pending further hearing. The application for emergency relief was premised on the possibility that without judicial intervention, expiration of the franchise might irrevocably bar its subsequent reinstatement even if the court should find that the Act was violated.

After the proposed *ex parte* order was presented, counsel for the dealer telephoned attorneys for Exxon, resulting in an agreed interim resolution of the crisis which I approved and signed as a court order. Under the agreed arrangement, termination of the franchise is deferred, but Exxon need not furnish fuel or otherwise affirmatively implement the relationship; settlement will be dis-

cussed, and if necessary the dealer may move for a preliminary injunction.

I write this memorandum to explain my reasons for signing the order even though originally presented *ex parte*.

## II

■ *Ex parte* relief under Fed.R.Civ.P. 65 by way of a temporary restraining order is an emergency procedure.

■ Issuance of a court order without prior notice to the party to be enjoined may cause irreparable injury to that party. Consequently, I permit *ex parte* procedure in connection with such applications only where irreparable injury will be caused absent prompt judicial intervention in circumstances where the adversary cannot be contacted, or where advance contact with the adversary would itself be likely to trigger irreparable injury. Situations in which *ex parte* relief may be appropriate include, for example, appointment of a receiver needed to preserve property in circumstances where defendants cannot expeditiously be found,[1] or discovery of contraband which may be destroyed as soon as notice is given.[2]

■ Absent presence of these kinds of factors, or other unusual circumstances, *ex parte* practice in seeking substantive interim relief is contrary to the Due Process Clauses of the Fifth and Fourteenth Amendments. Under those constitutional guarantees, notice must be given (or circumstances must exist making notice impracticable or hazardous) before the application of sovereign compulsion to authorize substantial interference with life, liberty or property. See *Connecticut v. Doehr*, —— U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991); *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Peralta v. Heights Medical Center*, 485 U.S. 80, 108 S.Ct. 896, 99

L.Ed.2d 75 (1987); *Brock v. Roadway Express*, 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S:Ct. 652, 94 L.Ed. 865 (1950).

The phenomenon of *ex parte* applications has long been a matter of concern. Theodore Roosevelt dealt with the problem in his State of the Union Message delivered December 8, 1908:

> The power of injunction is a great equitable remedy, which should on no account be destroyed. But safeguards should be erected against its abuse. I believe that provisions ... for checking the abuse of the issuance of temporary injunctions should be adopted. In substance, provision should be made that no ... temporary restraining order issue otherwise than on notice, except where irreparable injury would otherwise result. ...

3 *State of the Union Messages of the Presidents* 2311 (1966); see also *id.* at 2401 (William Howard Taft).

Attention to the problem is important, in part because of the increasingly intricate nature of statutes and implementing regulations affecting transactions which have become more and more sophisticated.[3] Another factor is the increasingly nationwide character of much economic activity, facilitated by the "national common market"[4] protected from undue local interference under the Commerce Clause of the Constitution, Art. I, § 8, cl. 3. In the context of nationwide economic activity, *ex parte* interim relief may have far-reaching consequences affecting distant parties or events.

## III

The importance of obtaining, when possible, the views of all parties in dealing with the need for and adequacy of an injunction bond under Fed.R.Civ.P. 65 is a further reason for avoiding *ex parte* applications wherever possible.

---

1. See *Federal Home Mortgage Corp. v. Spark Tarrytown, Inc.*, 813 F.Supp. 234 (S.D.N.Y.1993).

2. *In re Vuitton et fils SA*, 606 F.2d 1 (2d Cir. 1979).

3. See authorities cited, *Dollar Dry Dock Bank v. Denning*, 148 F.R.D. 124 (S.D.N.Y.1993).

4. *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 350, 97 S.Ct. 2434, 2445, 53 L.Ed.2d 383 (1977).

■ The provision in Fed.R.Civ.P. 65 for posting of an injunction bond has dual objectives. Imposition of a bond requirement where appropriate both insures and limits recovery if significant risk of harm to the enjoined party may be incurred. The injunction bond insures that funds will be available to compensate a party improvidently enjoined at the behest of the party posting the bond. See *W.R. Grace & Co. v. Local 759*, 461 U.S. 757, 770 n. 14, 103 S.Ct. 2177, 2185 n. 14, 76 L.Ed.2d 298 (1983); *Philips Business Systems v. Executive Communications Systems*, 744 F.2d 287, 290–91 (2d Cir.1984); Note, 99 Harv. L.Rev. 828 (1986); Note, 52 N.C.L.Rev. 1091, 1140–43 (1974).[5] It limits recovery against those who obtain or implement court orders, which have the force of law,[6] and protect them from being subjected to unlimited liability.

The risk created by the rule limiting recovery to the amount of the bond is that an enjoined party may be unable to obtain adequate redress. This risk may be reduced if there is a waiver of the rule limiting relief in such cases to the amount of the bond as a condition for granting interim relief, as in *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801 (5th Cir.1989), *modified* 883 F.2d 333 (5th Cir.1989). A *Continuum* order, while at times valuable, is not a panacea. It increases the countervailing risk to the applicant that it will be subjected to a nettlesome lawsuit in the event that the interim order—however appropriate and proper—is vacated because of further developments.

■ If representations are made that an emergency exists when it does not, accompanied by persuasive but inaccurate representations submitted to support minimization or denial of an injunction bond,[7] the victim of an ill-advised *ex parte* temporary restraining order may face difficulties in obtaining recompense.

## IV

Judges can and do decline to issue *ex parte* orders when such orders are sought without adequate factual justification. At the same time, initial responsibility for insuring that the underlying facts as well as the written application support the grant of *ex parte* relief rests on the applicant. Awareness of that obligation is important if abuse is to be avoided.

If no adverse consequences flowed from factually inaccurate applications for *ex parte* injunctive relief, the practice of applying for such relief would be encouraged. In the federal courts the practice is not encouraged; Fed.R.Civ.P. 11, which requires adequate factual inquiry prior to filing a paper in district court, applies to applications for *ex parte* injunctive relief, and mandates that there be proper factual bases for such applications.

■ The problem, of course, arises in both federal and state courts. See Committee on State Courts of Superior Jurisdiction, "Special Term, Part II," 33 Record of The Ass'n of the Bar of the City of New York 422, 434 (1978). Where state procedures are abused, rectification should be sought in state court in the first instance.[8] Where deliberate abuse of *ex parte* procedure occurs, resulting in triggering public sector sovereign authority without prior notice where notice is required by due process, the Constitution may be violated.[9]

---

5. Absence of an injunction bond may not bar recovery for obtaining an improvidently issued interim order if that order was sought as part of a broader pattern of improper conduct. *Commerce Tankers Corp. v. National Maritime Union*, 553 F.2d 793 (2d Cir.), *cert. denied* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977).

6. See *In re Anthony Sicari*, 151 B.R. 60 (S.D.N.Y. 1993).

7. Such a bond may be dispensed with where justified by the circumstances. See *West Virginia Highlands Conservancy v. Island Creek Coal Co.*, 441 F.2d 232, 236 (4th Cir.1971).

8. See *Lichtler v. County of Orange*, 813 F.Supp. 1054 (S.D.N.Y.1993); *Alpert v. Kramer*, 145 F.R.D. 318 (S.D.N.Y.1993).

9. If state remedies are inadequate—for example because too late to rectify the situation, as in *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)—issues under 42 U.S.C. § 1983 may also be presented. See generally *Edmonson v. Leesville Concrete Co.*, —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Howard Gault Co. v. Texas Rural Legal Aid*, 848 F.2d 544, 552–57 (5th Cir.1988); *United States v. Wiseman*,

## V

One of the chief disadvantages of excessive reliance on attempts to obtain *ex parte* injunctive relief is that the opportunity to work out an agreed interim resolution, which often becomes a final one, is forfeited. Instead, hostility between opposing counsel, with all of its evil effects, is promoted.

In the present instance, once communication was established, counsel for both parties seized the opportunity for statecraft rather than litigiousness at this early stage of the litigation. Because of this, no harm was caused by the *ex parte* nature of the initial application. Telephonic notice was given before I considered the application, resulting in an interim settlement between the parties prior to judicial consideration of the matter.

This praiseworthy approach should be encouraged. Because of the professionalism shown by counsel for both parties in achieving a mutually beneficial interim arrangement, the generalized comments made in this memorandum are an adequate response to the initial attempted use in this case of *ex parte* procedure.[10]

445 F.2d 792 (2d Cir.), *cert. denied* 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1971).

**10.** Compare *Roberts v. Lyons*, 131 F.R.D. 75 (E.D.Pa.1990).