John CAREY, as a County Court Judge of the State of New York, Plaintiff,

v.

Mario M. CUOMO, as Governor of the State of New York; and Judith S. Kaye, Francis T. Murphy, Guy J. Mangano, Leonard A. Weiss and M. Dolores Denman, members of and constituting the Administrative Board of the Courts of the State of New York, Defendants.

No. 93 Civ. 5698 (VLB).

United States District Court, S.D. New York.

Jan. 25, 1994.

E.A. Dominianni, Coudert Bros., New York City, for plaintiff.

John J. Sullivan, Asst. Atty. Gen., New York City, for defendant Cuomo.

Michael Colodner, New York City, for other defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case is brought under 42 U.S.C. § 1983 based upon the Equal Protection clause of the Fourteenth Amendment, challenging failure of New York State to afford post-retirement opportunities to County Court judges equal to those afforded certain other judges, even where the county judges performed the same duties as the more favored jurists. The litigation presents a delicate issue with respect to whether or not it is necessary to accord equal treatment to jurists performing functions similar to those performed by other jurists in spite of the absence of an Equal Pay Act[1] dealing with such a situation. It also presents a troublesome federalism issue: to what extent, if any, may federal courts intrude into internal state court judicial administration?[2]

The New York State Judiciary Law and the State Constitution, quoted as Appendix A to this memorandum order, permit under certain circumstances judges of the State's highest court, its Court of Appeals, and justices of its Supreme Court, the basic state trial court, to serve as justices of the Supreme Court for up to three additional two-year terms after having attained the mandatory retirement age of seventy (70). As now interpreted these provisions do not afford similar opportunities to County Court judges, whether or not they have served as Acting Supreme Court justices.

■ Plaintiff John Carey ("Carey"), a County Court judge who has served during some periods as an acting Supreme Court justice of Westchester, Rockland and Orange Counties, seeks a declaratory judgment that current interpretations of Article VI, Section 25(b) of the New York State Constitution and of New York Judiciary Law § 115 ("§ 115") are inconsistent with the Fourteenth Amendment's guarantee of equal protection under the laws because they discriminate without a rational basis against judges of the County Court by depriving them of the same opportunity for continued service enjoyed by Supreme Court justices and judges of the Court of Appeals.

Defendants have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), asserting that the challenged provisions as currently interpreted by New York State do not violate Judge Carey's equal protection rights because they are rationally related to a legitimate government purpose. The defendants further assert that the current interpretations of the State Constitution and § 115 follow from their plain meaning.[3]

Defendants' motions are denied without prejudice to renewal if, after the proceedings outlined in part V have been pursued, there remains an unlikely necessity for the motions to be determined. See cases cited, *Lichtler v. County of Orange*, 813 F.Supp. 1054 (S.D.N.Y.1993).

### II

■ Age of retirement does not constitute a suspect classification under the Equal Protection Clause, and no independently fundamental right is at stake; hence with respect

---

1. The federal Equal Pay Act, 29 U.S.C. § 206, requires equal pay for equal work only as to gender. Related requirements aimed at barring discrimination on specified invidious grounds are contained in Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq. None of these statutes appears to apply to the present case.

2. Injunctive relief may be granted against state officials to prevent continuing violations of federal law. *Hafer v. Melo*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908);

*Santiago v. New York State Dep't of Correction*, 945 F.2d 25, 32 (2d Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992).

3. Although this question should be presented to the state courts, at least in the first instance, it is far from clear whether or not the affirmative provisions of the State Constitution and § 115 are or were intended to be exclusive, and also whether or not they are amenable to the kind of purpose interpretation adopted in *Tedla v. Ellman*, 280 N.Y. 124, 19 N.E.2d 987 (1939).

to the differentiation at issue, only a rational relationship between a differentiation and a legitimate government purpose must be established. See *Gregory v. Ashcroft,* —— U.S. ——, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1993).

*Maresca v. Cuomo,* 64 N.Y.2d 242, 475 N.E.2d 95, 485 N.Y.S.2d 724 (1984), constitutes a New York State judicial determination of the legitimacy of legislative judgments concerning which courts need additional assistance from retired jurists are legitimate. In *Maresca,* it was deemed rational for New York State to permit Court of Appeals judges and Supreme Court justices to serve on the Supreme Court after the age of seventy because that court required greater experience and manpower than are necessary in other courts. 64 N.Y.2d at 252–53, 475 N.E.2d 95, 485 N.Y.S.2d 724.

### III

Whether County Court Judges designated at times as acting Supreme Court justices must be offered the opportunities to be considered for subsequent service offered to elected or appointed ("titular") Supreme Court justices, or whether budgetary considerations or perceptions of differing experience permit another approach, remains to be evaluated. Any rational grounds for legislative action will suffice, whether or not set forth in available legislative history—which tends to be scanty in New York. See Cashman, "Availability of Records of Legislative Debates," 24 Record of The Ass'n of the Bar of the City of New York 153 (1969).

■ If a legislative act is on its face permissible, it cannot be held impermissible because of inadequate explication—unless unlawful intent such as invidious discrimination or intent to interpose mercantilist barriers to the "national common market"[4] can be inferred. Such unlawful intent is not suggested here. See *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).[5]

Here, the legislative and administrative bodies involved—or the state courts if given the opportunity to consider the issue—might determine that it would be prudent to permit only titular, and not acting, state Supreme Court justices to qualify for consideration for post-retirement service. The experience of titular Supreme Court justices is automatically and mechanically established, without the need to evaluate whether or not a particular jurist's duty as an acting Supreme Court justice was sufficiently extensive to have the same relevance to anticipated future performance. Such a mechanical credential-based distinction may be unwise, harsh, unfair or counterproductive[6] and perhaps even constitute unreasonable hairsplitting. The problem involved may be worthy of legislative, administrative or state court judicial re-examination under state law. It is doubtful, however, that the distinction now imposed is so irrational as to violate the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States where there is no suspect categorization, and where there is available, on the state level, various engines for political or judicial correction, if necessary.[7]

### IV

Legislative bodies expending public monies for employment and similar purposes connected with their sovereign functions, where no coercion or breach of commitments is involved, probably are entitled to particularly broad latitude under the rational relationship concept. Were the contrary the case, federal judicial inference with state internal operations might impose a straitjacket on state proprietary operations.

At the federal level, the Appropriations Clause, Art. I, § 9, cl. 7, provides that "No

---

**4.** *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 350, 97 S.Ct. 2434, 2444, 53 L.Ed.2d 383 (1977).

**5.** "[I]f the articles of the instrument be constitutional, can the preparatory steps make them not so?" 5 Annals of Cong. 411 (1796), quoted in Powell, "The Original Understanding of the Original Intent," 98 Harv.L.Rev. 885, 918 (1985).

**6.** See authorities cited, *Tetra Technologies v. Harter,* 823 F.Supp. 1116, 1118 n. 5 (S.D.N.Y.1993).

**7.** See *United States v. Carolene Products Co.,* 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 784 n. 4, 82 L.Ed. 1234 (1938); Powell, "*Carolene Products* Revisited," 82 Columbia L.Rev. 1087 (1982).

money shall be drawn from the Treasury, but in Consequence of Appropriations made by law ..." Federal courts have found judicial review of the constitutionality of federal financial decisions directly affecting private parties to have been authorized by law, without having to reach the question of whether, in various situations, Congress could validly eliminate such review.[8] But in implementing such review courts are solicitous not to interfere unnecessarily with decisions regarding eligibility for benefits to be paid from federal monies where limited by restrictions in legislative authorizations. See *United States v. Dalm,* 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). The effects can at times be at least as harsh as those complained of by the plaintiff here. See *State of Connecticut v. Schweiker,* 684 F.2d 979 (D.C.Cir. 1982); *Pratte v. NLRB,* 683 F.2d 1038 (7th Cir.1982).

■ Federal courts are justifiably cautious in imposing restrictions on state decision-making where comparable restrictions are not imposed at the federal level. See *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) (federal farm programs relevant to whether similar state activities violated federal law). Here, of course, equal protection concepts apply to the federal government through the due process requirement of the Fifth Amendment. See *United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) (District of Columbia desegregation case).

### V

Before ruling on Carey's contentions under the Fourteenth Amendment, it appears prudent to permit the legislature and state authorities and administrative agencies to re-evaluate the current interpretation of the state provisions.

Plaintiff may also choose to pursue in state court the question of whether or not interpretations of the State Constitution and § 115 denying him opportunities afforded to Supreme Court justices are improper under state law.[9] If the state courts are invited to or do rule on the equal protection issue prior to any ruling here, that ruling might be *res judicata* subject to the remedy of a petition for *certiorari* under 28 U.S.C. § 1257. See *Allen v. McCurry,* 449 U.S. 90, 100–101 & n. 17, 101 S.Ct. 411, 418 & n. 17, 66 L.Ed.2d 308 (1980); *Benjamin v. Coughlin,* 905 F.2d 571, 575 (2d Cir.), *cert. denied* 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990); see also *Rooker v. Fidelity Trust Co,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

Absent indications to the contrary, a full term of the State Legislature should be presumed to be necessary to determine whether remedial action may be taken.

**SO ORDERED.**

### APPENDIX A

Article VI, Section 25(b) of the New York State Constitution provides in pertinent part:

Each judge of the court of appeals, justice of the supreme court, judge of the court of claims, judge of the county court, judge of the surrogate's court, judge of the family court, judge of a court for the city of New York established pursuant to section fifteen of this article and judge of the district court shall retire on the last day of December in the year in which he reaches the age of seventy. Each such former judge of the court of appeals and justice of the supreme court may thereafter perform the duties of a justice of the supreme court, with power to hear and determine actions and proceedings, provided, however, that it shall be certified in the manner provided by law that the services of such judge or justice are necessary to expedite the business of the court and that he is mentally and physically able and com-

---

8. See *Bartlett v. Bowen,* 816 F.2d 695 (D.C.Cir.), *reinstated* 824 F.2d 1240 (D.C.Cir.1987); *Marozsan v. United States,* 852 F.2d 1469, 1477–79 (7th Cir.1988) (en banc); see also *Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Lindahl v. OPM,* 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985); *Philadelphia v.*

*Stimson,* 223 U.S. 605, 619–20, 32 S.Ct. 340, 344, 56 L.Ed. 570 (1912) (Hughes, J.).

9. The proper interpretation of the State Constitution and § 115 involve complex issues of state law, justifying declination of any exercise of supplemental jurisdiction under 28 U.S.C. § 1367.

petent to perform the full duties of such office. Any such certification shall be valid for a term of two years and may be extended as provided by law for an additional term of two years. A retired judge or justice shall serve no longer than until the last day of December in the year in which he reaches the age of seventy-six. . . .

Judiciary Law § 115 provides:

1. Any justice of the supreme court, retired pursuant to subdivision b of section twenty-five of article six of the constitution, may, upon his application be certified by the administrative board for service as a retired justice of the supreme court upon findings (a) that he has the mental and physical capacity to perform the duties of such office and (b) that his services are necessary to expedite the business of the supreme court. . . .

2. Any such certification shall be valid for a term of two years beginning on the date of filing the certificate. At the expiration of such term the retired justice may be certified for additional terms of two years each by the administrative board upon findings of continued mental and physical capacity and need for his services. No retired justice may serve under any such certification beyond the last day of December in the year in which he reaches the age of seventy-six.