**REPUBLIC INSURANCE COMPANY, Plaintiff,**

v.

**MASTERS, MATES AND PILOTS PENSION PLAN, Aetna Casualty and Surety Company, and Federal Insurance Company, et al., Defendants.**

No. 88 Civ. 5345 (VLB).

United States District Court,
S.D. New York.

Feb. 24, 1994.

Glenn J. Fuerth, Wilson Elser, Moskowitz et al., New York City, for plaintiff Republic.

Robert P. Stein, Camhy Karlinsky & Stein, New York City, for defendant Aetna.

Barry R. Ostrager, Simpson Thacher & Bartlett, New York City, for defendant Federal.

Kenneth P. Clark, Carter, Ledyard & Milburn, New York City, for pension fund.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This litigation involves an inter-insurer dispute concerning liability for legal defense costs in connection with a long-running complex lawsuit. The underlying cases (the "main litigation") which were consolidated and settled prior to trial with the assistance of United States Magistrate Judge Naomi Reice Buchwald, involved maritime investments by the Master, Mates and Pilots Individual Retirement Income Pension Plan and Pension Plan (collectively the "pension plan")—investments were designed to promote jobs in the industry.[1] See generally *Lowen v. Tower Asset Management*, 653 F.Supp. 1542 (S.D.N.Y.), *aff'd.* 829 F.2d 1209 (2d Cir.1987); *In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020 (2d Cir.1992) (remanding for revision of initial settlement).

There is no indication in this litigation of actual or attempted personal enrichment on the part of pension plan officers. But legal risks were incurred in the management of the pension plan, and in fact a series of lawsuits arose.

Job protection is an objective recognized by federal legislation;[2] it is traditionally primary goal of trade unionism in virtually all industries.[3] To the extent that they were

1. The global settlement, embracing all liability and defense costs except as to inter-carrier disputes and one unrelated pendent claim, was approved on November 2, 1992.

2. See Worker Adjustment and Retraining Notification Act, 29 U.S.C. 2101–1209; see also *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987); Committee on Labor & Employment Law, "Interaction Between the Worker Adjustment and Retraining Notification Act and the National Labor Rela-

tions Act," 46 Rec. Ass'n Bar City NY No. 2 at 161 (March 1991).

3. See generally *National Woodwork Mfrs. Ass'n v. N.L.R.B.*, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967); *United States v. Petrillo*, 75 F.Supp. 176 (N.D.Ill.1948); American Assembly, *Automation and Technological Change* (1962); Barnett, *Machinery and Labor* (1926); Perlman, *A Theory of the Labor Movement* (1928); F. Dulles, *Labor in America* (1949); Zausner, *Unvarnished* (1941).

suboptimal from an investment viewpoint, the pension plan's maritime investments departed from singleminded dedication to the financial interests of the plan beneficiaries in favor of dedication to the interests of the employees represented by the union, which sought to retain jobs in the industry.

While both security of pension funds and job preservation are legally as well as pragmatically important,[4] the fiduciary duties imposed upon trustees and officers of pension plans covered by ERISA (29 U.S.C. 1001 *et seq.*) limit the ability of plan managers to pursue job promotion objectives where the investments chosen are risky.[5]

In resolving the main litigation, substantial settlement and defense costs were incurred, although only defense costs are at issue in the present inter-insurer litigation. Because the cases brought against the pension plan and its trustees were settled, there was no ultimate adjudication as to whether or not illegal behavior on the part of either actually occurred.[6] While the pension plan remains a nominal defendant in the current case and plaintiff Republic Insurance Company ("Republic") asks that its policy be rescinded, no live controversy between Republic and its insureds exists at the present time. Republic seeks no reimbursement from the pension plan, and the pension plan seeks no further payments from Republic.

All matters relating to indemnification for amounts paid in settlement of damage claims have been settled as part of the global resolution of the main litigation and are not involved here. The present litigation focuses on disputes between insurers with regard to ultimate responsibility for defense costs which have already been paid to the insureds or their defense counsel. The pension plan takes the position that in light of the global settlement of the case and the absence of any monetary claims by or against it, there is no genuine controversy between the plan and plaintiff Republic.[7] This position waives any counterclaims against Republic and any potential claims by the pension fund against Republic. Thus the pension plan will be unaffected by the resolution of the current inter-carrier controversy.[8]

## II

Defendant Aetna Casualty and Surety Company ("Aetna") provided insurance to the pension plan and its officials up until a time when plaintiff Republic assumed some of those risks. Republic agreed to offer coverage only after questioning the reasons for Aetna's desire to step aside and being given adequate but inaccurate assurances by pension plan officials that there were no then-known risks. Republic inquired of the pension plan management whether any trustee was aware of facts which might lead to a claim. As stated in Republic's virtually unopposed statement of facts:

> No mention was made about ... secret participation ... in making maritime investments to increase union employment, nor that internal Plan guidelines prohibited such investments....

Republic also asserts without contradiction that had it known of such investments, it would not have issued its policy to the pension plan.

Losses to the pension plan did in fact occur and as a result of the ensuing complex litigation concerning the management of the pen-

4. See *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944).

5. Similar problems arise where corporate maneuvers desired by management and the interests of employee beneficiaries of purely employer-created pension plans may diverge. Thus where corporate ERISA plan trustees utilize funds in ways beneficial to the objectives of management, e.g., engaging in leveraged buyouts, the interests of the plan beneficiaries may not favor such investments. See Huber, "ERISA, Employees and Creditor's Rights," 67 Wash.U.LQ. No. 2 at 461 (1989).

6. Summary judgment was, however, granted against various entities and individuals who functioned as investment advisers to the pension plan.

7. Opposition of Defendants, Masters, Mates & Pilots Pension Plan, Dkt. No. 814 (dated Oct. 29, 1993 filed at direction of the court Jan. 19, 1994).

8. The court has unsuccessfully urged the insurers involved to resolve this inter-insurer, intra-industry dispute through arbitration or other binding means of alternative dispute resolution.

sion plan, payments were made by Republic, Aetna and the defendant Federal Insurance Company ("Federal") for portions of the costs of defending the main litigation.

## III

Aetna and Federal were concededly insurers at the time their insureds (the pension plan and its trustees) took steps ultimately leading to the main litigation. Defense costs necessarily involve dealing with both prior [9] and subsequent [10] events which affect the interpretation of facts, and defense costs under a policy providing for them must be paid if there is any reasonable possibility of liability of the insured, barring contrary policy provisions not involved here.

 New York law holds that with respect to policies containing a legal defense clause, the duty to defend applies unless as a matter of law there is no possible basis on which the insurer might eventually be obligated to indemnify. *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 848, 487 N.Y.S.2d 314, 476 N.E.2d 640 (1985); *Servidone Constr. Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985). The principle was aptly stated in *Lionel Freedman, Inc. v. Glens Falls Ins. Co.*, 27 N.Y.2d 364, 368, 318 N.Y.S.2d 303, 267 N.E.2d 93 (1971):

> The courts have recognized that the obligation to defend is broader than the duty to pay.... It extends to any action ... groundless, false or fraudulent, in which facts are alleged within the coverage afforded by the policy.... This duty includes the defense of those actions in which alternative grounds are asserted, some within and others without the protection purchased....

 The principle was also treated in *Cordial Greens Country Club v. Aetna Casualty*

*& Surety Co.*, 41 N.Y.2d 996, 997, 395 N.Y.S.2d 443, 363 N.E.2d 1178 (1977), a case remarkably similar to the present one and involving one of the same insurers:

> ... Each insurer argues that, based on the allegations in the complaint, the other is liable to pay any judgment ... [B]ased on exclusions in each policy, an argument may be made that the occurrence is not within the coverage of either policy. Each policy, however, has a clause that requires the insurer to defend based on the allegation of an occurrence within the coverage, and it is well established that the duty to defend is much broader than the duty to pay....

Accordingly, to the extent not held covered by Republic as a later-arriving carrier, the defense costs at issue here must by default in any event be borne by Aetna and Federal.

## IV

 By order of September 14, 1990 (the "1990 order") I held that Republic "is required to contribute to the defense costs of the [pension] Plans and trustees in conjunction with" the litigation. At that time, Republic argued that it need not pay the defense costs at issue because of aspects of the timing of the claims and events involved. Republic now moves for summary judgment based upon a separate, distinct issue: that key officials of the pension fund [11] were aware of the behavior leading to the expenses Republic was required to pay but hid such facts from Republic. Republic asserts that this permits it to rescind its policy and recover back from Aetna payments it made which Aetna would otherwise have had to pay, with interest. Aetna and Federal have cross-moved for summary judgment seeking to compel Republic to pay defense costs beyond those it has already paid.

---

9. *Local Lodge 1424 v. N.L.R.B.*, 362 U.S. 411, 416, 80 S.Ct. 822, 826, 4 L.Ed.2d 832 (1960).

10. See *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir.1990); *Eatz v. DME Unit of Local Union No. 3*, 794 F.2d 29 (2d Cir.1986); *Phoenix Canada Oil Co. v. Texaco*, 842 F.2d 1466, 1487 (3d Cir.1988).

11. The maritime investments challenged in the lawsuit were promoted by the union trustees as a job-creation measure; the extent of involvement of management trustees (whose presence was required by § 302 of the Labor–Management Relations Act of 1947 (Taft–Hartley Act), 29 U.S.C. 186) has never been determined.

The 1990 order, dealing with different issues and with interim defense cost payments to permit the litigation to proceed in an orderly manner without determining the ultimate division of defense costs among the insurers, was in the nature of a preliminary injunction rather than a ruling on the ultimate merits of inter-insurer claims; it is inapplicable here.[12]

## V

Republic has submitted substantial evidence, which neither Aetna nor Federal has contested, that key officials of the pension funds knew of the improper behavior which led to the litigation between the funds and others, and to the defense costs at issue here, and that those officials failed to inform Republic despite its inquiries. In light of the failure of the defendants in the present litigation to challenge either Republic's factual claims or the conclusion that Republic was misled, I treat Republic's contentions in those respects as true for purposes of the current inter-carrier dispute.

■ However, lacking at this point is the robust adversarial conflict necessary for adjudication of whether or not Republic's policy should be rescinded as to all insured or co-insured parties. See *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *Arthur v. Manch,* 12 F.3d 377 (2d Cir.1993); *In re Chateaugay Corp,* 988 F.2d 322, 325 (2d Cir. 1993); *New York City Employees' Retirement System v. Dole Food Co.,* 969 F.2d 1430, 1433 (2d Cir.1992). No adversarial position is before the court as to the merits of Republic's contentions as they would apply to less involved trustees or officials of the pension plan is before the court.

The only actual live controversy which is presented is between the carriers, not between Republic and the insureds. The concrete issues relating to this inter-carrier controversy are whether or not Aetna and Federal would be unjustly enriched at Republic's expense if Republic, having been misled about the risk at the time it assumed that risk, were (1) required to make further payments of legal expense costs or (2) unable to recover back such costs already paid from the other insurers, which were liable for such costs under their policies.

There is a significant distinction between the live controversy between Republic and the other carriers on the one hand, and any possible dispute between Republic and the pension plan. The inter-insurer dispute does not require me to determine the circumstances, if any, under which misleading behavior by some officers of a pension plan or other entity may result in voiding an insurance policy as to innocent persons. Difficult questions could be presented concerning whether or not innocent insureds who may not have been involved in the deception should be deprived of coverage.[13] Were the pension plan a true litigant it might, for example, argue that multiple beneficiaries of the Republic policy were involved who were in substance co-insureds who should not lose coverage solely because of misrepresentations by others. See *Reed v. Federal Insurance Co.,* 71 N.Y.2d 581, 528 N.Y.S.2d 355, 523 N.E.2d 480 (1988).

A sensitive balance must be struck between the vital right of insurers to honest provision of information by insureds and the interest of policyholders who may be innocent in being protected. Permitting fraud would undermine the availability of insurance to the innocent, just as would direct penaliza-

---

12. Even if the interim 1990 order were directly on point and inconsistent with the ruling now made, which it is not, "the 'law of the case' does not rigidly bind a court to its former decisions, but is addressed only to its good sense." *Higgins v. California Prune & Apricot Grower,* 3 F.2d 896, 898 (2d Cir.1924); see *Brunswick Corp. v. Sheridan,* 582 F.2d 175, 177 (2d Cir.1978).

13. An issue of estoppel against a carrier seeking to rescind could be presented if, as between

innocent parties and a carrier, the carrier was in a better position to make choices and to insist on further details that would have revealed improper behavior, particularly if the carrier's suspicion was already aroused. See *Kane v. Aetna Life Ins. Co.,* 893 F.2d 1283 (11th Cir.1990); *West Am. Ins. Co. v. Park,* 933 F.2d 1236, 1239 (3d Cir. 1991); see also *Morgan v. McNiff,* 797 F.Supp. 325 (S.D.N.Y.1992); *Estate of Sheradsky v. West One Bank,* 817 F.Supp. 423 (S.D.N.Y.1993).

tion of co-insureds or other innocent parties. Fine gradations ranging from outright deception, knowing toleration of it, deliberate ignorance, and negligence to lack of diligence or complete innocence are frequently at issue and can only be evaluated in such a way that by acute attention to the "steady pressure of facts and events," all interests are adequately protected. H.F. Stone, *Law and Its Administration* 37, 45 (1915).

To decide such questions without a full adversary presentation would be imprudent in view of the wide ramifications of creating an ill-advised precedent pointing either way. Such a precedent might (a) encourage dissembling by officials of an entity seeking insurance, or (b) encourage carriers to use lack of candor by a single officer to avoid a policy on which many others have counted for protection. I decline to seize either nettle because to do so is unnecessary here and, indeed, contrary to the objectives of the Article III case or controversy requirement.

There is insufficient adversarial interest to permit an appropriate evaluation to be made with respect to rescission and thus these questions need not be confronted here. But there is ample uncontradicted evidence to determine the proper disposition of the current controversy between carriers.

### V

Aetna and Federal, in lieu of contesting Republic's claim to have been misled, rely on procedural objections such as waiver, untimeliness in disclaiming coverage and estoppel, all based upon delay in the nature of laches, none of which has merit. There is no indication that Aetna or Federal were prejudiced because of any delay on Republic's part. See *Bourne Co. v. Tower Records,* 976 F.2d 99 (2d Cir.1992); *Daingerfield Island Protective Soc'y. v. Lujan,* 920 F.2d 32 (D.C.Cir.1990) (R. Ginsburg, J.), *cert. denied,* —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991). Republic secured no advantage, and the other carriers incurred no disadvantage, from any such delay.

Aetna and Federal were independently liable for the defense costs at issue here, and would have had to pay the legal costs paid by Republic under the 1990 order had Republic not done so at least in part. Now Republic has discovered, and established as between it and Aetna and Federal, that Republic was misled by some plan officials when deciding to issue its policy, whereas there is no indication that Aetna and Federal were so misled. Under these circumstances the equities, between Republic on one hand and Aetna and Federal on the other, lie with Republic.

■ A misled carrier clearly is entitled to appropriate relief. See *Stipcich v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 317, 48 S.Ct. 512, 513, 72 L.Ed. 895 (1928); *Mutual Benefit Life Ins. Co. v. JMR Elec. Corp.,* 848 F.2d 30, 32–33 (2d Cir.1988); *Friedman v. Prudential Life Ins. Co.,* 589 F.Supp. 1017 (S.D.N.Y.1984); *Erwin DeMarino Trucking v. Jackson,* 838 F.Supp. 160 (S.D.N.Y. 1993).

■ Here, the funds saved by other carriers who are unquestionably liable for defense costs in the main case, paid by Republic in order to permit the main case to proceed without delay while responsibility for defense costs was litigated, are properly treated as constructively in trust for a carrier which became one of the group of insurers in this case based on erroneous information. See *Channel Master v. Aluminum Sales,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958); *Drabkin v. District of Columbia,* 824 F.2d 1102 (D.C.Cir.1987).

Such a step is analogous to subordination of the position of the unequivocally liable carriers to Republic which was the victim of misconduct contributing to its entry into the matter. See *In re Clark Pipe & Supply Co,* 870 F.2d 1022 (5th Cir.1989).

### VI

■ Republic is not entitled to interest under any applicable contract provision. Payments made by Republic under the 1990 order may be recovered to avoid unjust enrichment of other carriers at Republic's expense. But damages in the form of interest or otherwise for obedience to a court order are generally unavailable absent an injunction bond, or waiver of the injunction bond rule, neither of which was obtained here. See *W.R. Grace & Co. v. Local 759,* 461 U.S.

757, 770 n. 14, 103 S.Ct. 2177, 2185 n. 14, 76 L.Ed.2d 298 (1983); *Philips Business Systems v. Executive Communications,* 744 F.2d 287, 290–91 (2d Cir.1984); *Commerce Tankers Corp. v. National Maritime Union,* 553 F.2d 793 (2d Cir.), *cert. denied* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977); *Continuum Co. v. Incepts,* 873 F.2d 801 (5th Cir.), *modified* 883 F.2d 333 (5th Cir.1989); *Little Tor Auto Center v. Exxon U.S.A.,* 822 F.Supp. 141, 144 (S.D.N.Y.1993); see also *In re Anthony Sicari,* 151 B.R. 60 (S.D.N.Y. 1993).

## VII

Summary judgment is granted to Republic to the extent of exonerating it from further payment of legal fees in connection with the above case; Aetna is directed to pay to Republic any fees paid by Republic pursuant to my 1990 order. Except as indicated above, all motions of the parties, including Federal and Aetna's notions for summary judgment, are denied.

Republic may submit a proposed judgment within thirty (30) days of the date of this memorandum order, and shall provide twenty (20) days' notice to all other parties.

SO ORDERED.